IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| SHARK COAST TACTICAL LLC | ) | |
| 2819 Bee Ridge Road, Suite A | ) | |
| Sarasota, FL 34239 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AARON R. GERBER | ) | CASE NO. _____ |
| Director of Industry Operations | ) | |
| Tampa Field Division | ) | |
| Bureau of Alcohol, Tobacco, Firearms | ) | |
| & Explosives | ) | |
| 400 North Tampa Street | ) | |
| Suite 2100 | ) | |
| Tampa, FL 33602 | ) | |
| | ) | |
| Respondent. | ) | |

## PETITION FOR JUDICIAL REVIEW

COMES NOW Petitioner Shark Coast Tactical LLC, by and through counsel, and files its Petition for Judicial Review of a Final Notice of Revocation of Firearms License, and Final Notice of Denial of Application, both dated May 22, 2017, and states to the Court the following:

1.    This is a petition for *de novo* judicial review of the revocations of two federal firearms licenses ("FFLs"), and the denial of an application for a federal license as a dealer in firearms other than destructive devices. This action is timely brought pursuant to 18 U.S.C. 923(f)(3) and its related regulations.

1

## PARTIES

2.      Shark Coast Tactical LLC ("Shark Coast") is a limited liability company organized under the laws of the State of Florida.  Shark Coast was organized by William Crozier Meade IV, who is its sole member and sole manager.  Shark Coast's principal place of business is in Sarasota, Florida. Since 2011, Shark Coast has operated a retail firearms store pursuant to a federal firearms license, and it also holds a license as a manufacturer of firearms.

3.      Respondent Aaron R. Gerber ("DIO Gerber") is the Director of Industry Operations ("DIO") of the Tampa Field Division of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and is sued in his official capacity as DIO.  Shark Coast Tactical LLC is within the jurisdiction of the Tampa Field Division, and DIO Gerber has authority over issuance and revocation of licenses for that Division.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, including without limitation 18 U.S.C. Ch. 923, 18 U.S.C. § 923(f)(3) *et seq.,* and related regulations.

5.      Venue is proper in the Tampa Division of the United States District Court for the Middle District of Florida because Shark Coast has its principal place of business in Sarasota.

## FACTS

6.      Shark Coast currently owns and operates a firearms dealership, for which it holds two valid FFLs.  Its license as a firearms dealer (including pawnbroker) is No. 1-59-

115-02-7B-30742, and its license as a firearms manufacturer is No. 1-59-115-07-7B-30785.

7.     Over the past half dozen years, William Meade has built Shark Coast into a successful enterprise.  It is the principal support for Mr. Meade, his wife Lorrie Vogel-Avendano Meade, and their seven children.  Shark Coast provides employment for ten individuals, including disabled veterans.  In addition to selling firearms, it provides instruction on firearms safety to members of the public.

8.     Shark Coast was subjected to an ATF compliance inspection initiated on August 19, 2014.  It had never had a compliance inspection previously.

9.     Various issues of record-keeping non-compliance were identified by ATF during the compliance inspection.  Additionally, ATF claimed that during Shark Coast's several years of operation, in which Shark Coast sold approximately 9,000 firearms, there was a problem with the background check for a sale to one purchaser.  Before a licensed dealer may transfer a firearm to a purchaser, the dealer must perform a background check on the individual through the National Instant Check System ("NICS").  In Florida, this system is administered by the Florida Department of Law Enforcement ("FDLE").

10.     In 2014, an individual named Damon William Phillips sought to purchase a shotgun and a rifle.  Shark Coast properly submitted the information to FDLE, but the background check system had issued a "delay" result, rather than a "proceed" result which was needed to allow the firearm transfer to occur at that time.  The transfer may occur three business days after a delay is issued if the background check system does not issue a denial during that period.  When a clerk re-checked with FDLE by telephone to see if the delay

had been changed, she erroneously believed that the transactions were approved, and so informed Mr. Meade. ATF later informed Shark Coast during the 2014 inspection that the transfer had been denied.

11.     During and immediately after the 2014 inspection, Shark Coast began implementing additional measures to ensure compliance with the governing statutes and regulations. Among other things, Shark Coast hired a full-time compliance officer, who had extensive compliance experience for a national firearms company. He continues to be employed as compliance officer for Shark Coast.

12.     Mr. Meade's compliance inspection was not closed or finalized shortly after the inspection, as is customary with ATF compliance inspections.

13.     Months after ATF's last presence in Mr. Meade's store, two ATF agents came to Shark Coast's store and stated that they were going to visit Damon William Phillips and "if their stories didn't match, [Mr. Meade] was going to jail."

14.     Months after ATF's threat, Mr. Meade encountered the same two ATF agents at a local gun show where Mr. Meade was told by the agents with respect to the transaction with Mr. Phillips, "Everything checked out, we recovered the firearms, you're good-to-go." The agents then enlisted Mr. Meade's help in trying to encourage potential buyers, who were suspicious to the ATF agents, to purchase firearms from Shark Coast. No such purchases occurred.

15.     On July 20, 2015, Shark Coast signed a lease for a second location, in Valrico, Florida. On July 21, 2015, Shark Coast applied for an FFL at that location. It is necessary to identify on the FFL application the business premises out of which the licensee

4

will conduct the firearms business, so such arrangements have to be made in advance of the application.  ATF agents met with Mr. Meade at the new location during the initial inspection in August of 2015.  They advised him that he could start making capital investments in the property but not to purchase firearms until the approved FFL arrived in the mail.  Mr. Meade relied on ATF's advice, and Shark Coast purchased items such as flooring, cases, tools, doors, and a point-of-sale system, and hired two people.

16.    Instead of an FFL for the Valrico location, Shark Coast received notices in the mail from the ATF, dated September 22, 2015, that stated that Shark Coast's application for the Valrico location was rejected and that Shark Coast's original FFLs were being revoked because of the transfer to Damon William Phillips approximately one and half years previously.

17.    On October 21, 2015, after talks between ATF and Shark Coast's attorney, ATF issued Superseding Notices of Suspension, replacing the original revocation notices. The Superseding Notices provided that Shark Coast's FFLs be temporarily suspended for the ten day period from October 26, 2015 through November 4, 2015, and that Shark Coast would pay a $5,000 civil fine.  During the suspension period, no activity pursuant to Shark Coast's FFLs could be conducted.  Shark Coast and Mr. Meade adhered to the terms of the suspension and timely paid the $5000 fine.  Shark Coast was told by ATF to withdraw its application for the Valrico location, which Shark Coast did.

18.    ATF also verbally advised Shark Coast's attorneys that Shark Coast would not be permitted to apply for the second FFL again until one year had passed.  No such condition was contained in the Superseding Notices of Suspension.  No statute provides

ATF with the authority to impose unilaterally such a condition on a license, licensee, or applicant.

19.     Shortly after the suspension ended, Shark Coast began to implement even more compliance measures.  An assistant to the Compliance Officer was hired, making two persons responsible for compliance.  Shark Coast purchased a computerized point-of-sale system, to increase the accuracy and completeness of ATF recordkeeping and help prevent any errors.  Shark Coast switched to performing background checks with FDLE by computer, rather than by telephone.  Later, additional procedures and systems were put in place to capture screenshots of results returned by background checks, and to cross-reference control numbers returned from FDLE with the transaction forms, point-of-sale system, and receipt book.  These are checked by four individuals, including the compliance officer.

20.     In an effort to make use of the Valrico location, Lorrie Vogel-Avendano Meade, William Meade's wife, decided to quit her business as a realtor and open her own firearm retail business there.  Mrs. Meade had worked at Shark Coast as a volunteer, and was familiar with the business.  On October 16, 2015, Lorrie Vogel-Avendano Meade filed Articles of Organization with the Florida Secretary of State's office, organizing Brandon, LLC as a limited liability company of which she was the sole member and sole manager.

21.     On November 5, 2015, Brandon LLC entered into a lease agreement for the premises in Valrico. On the same day, Brandon LLC applied for an FFL for the Valrico location.  The FFL could not be issued without ATF's knowledge and approval.

22.     An ATF attorney, Donnette Williams, contacted Mrs. Meade's counsel and

stated that ATF was going to deny Brandon LLC's application unless ATF could be convinced that Mr. Meade was not involved with Brandon LLC's business and FFL application. There was no statutory prohibition against any involvement by Mr. Meade or Shark Coast with Brandon LLC. There was no statutory prohibition against Brandon LLC or Mrs. Meade receiving an FFL for the Valrico location.

23.     Nevertheless, ATF requested a signed affidavit from Mrs. Meade, sworn under penalty of perjury, that Mr. Meade was not involved and that he would never be present at her location nor would he be involved in discussions about the business. Mrs. Meade knew that her husband was likely to be present from time to time at the location, even if they were just meeting for lunch, and that she would likely have at least one discussion with her husband about her business. Additionally, Mrs. Meade was very worried that her attempt to run her own business was going to cast her and her husband's independent businesses in a negative light with the ATF. Out of an abundance of caution, Mrs. Meade decided to stop pursuing her own venture.

24.     Because ATF, without legal justification, refused to allow Shark Coast to use the Valrico location as a second location, and because ATF, without legal justification, refused to approve Brandon's application for that location, the only remaining option was to use the location as a non-firearm accessories store, which does not require an FFL, for Shark Coast.

25.     Mr. Meade announced on social media that the location would be used as an accessory store. He clearly explained that this was because of the inability at the time to get an FFL, but that one should be forthcoming.

7

26.     Brandon withdrew its FFL application on April 19, 2016. ATF formally rejected Brandon's application by a Notice to Deny Application, dated April 19, 2016, and received by Mrs. Meade on May 3, 2016.  That Notice stated two grounds for the denial.

27.     First, ATF alleged that the "applicant willfully made a false statement as to a material fact in connection with its application in that, on or about November 5, 2015, Brandon Tactical, LLC . . . filed an application for a license as a dealer in firearms . . . when, in fact, the entity seeking a license is Shark Coast Tactical, LLC in violation of 18 U.S.C. § 924(a)(l)(A) and 27 C.F.R. § 478.128(a)."  However, the entity seeking an FFL was Brandon LLC, not Shark Coast Tactical LLC, as shown by the application itself, and no false statement was made by Brandon LLC, Lorrie Vogel-Avendano Meade, or anyone else.

28.     Second, ATF alleged that the "applicant willfully failed to disclose material information required in connection with its application in that the application for license completed by Lorrie Vogel-Avendano on behalf of Brandon Tactical, LLC, did not list William Crozier Meade, IV, in item 22 as an individual owner, partner, or other responsible person in the business."  However, William Meade was not an individual, owner, partner, or responsible person for Brandon.  Indeed, he could not be a responsible person for Brandon because it had not yet commenced operations as a dealer and did not have an FFL.

29.     Shark Coast underwent another compliance inspection by ATF late in the Spring of 2016, which resulted in no action against Shark Coast's licenses.

30.     Shark Coast re-applied for an FFL at the Valrico location by application dated August 2, 2016, intending to open a firearms dealership there when the one year

period expired in November.

31.     A Notice to Deny Application for License and a Notice to Suspend or Revoke License, both dated September 26, 2016, were sent by ATF to Shark Coast Tactical LLC, notifying Shark Coast that its second application for the Valrico location was again being denied and that its current FFLs were being revoked.  This time, ATF claimed that Shark Coast had lied on Brandon LLC's application (not Brandon LLC), even though neither Shark Coast nor William Meade had filled out that application, and it was not submitted by Shark Coast.  Specifically, ATF alleged that Shark Coast "knowingly and willfully made false statements as to a material fact in connection with [the Brandon application] filed on or about November 17, 2015, by falsely listing Brandon Tactical, LLC as the applicant for such license when, in fact, the entity seeking the license was Shark Coast Tactical, LLC, in violation of 18 U.S.C. § 924(a)(l)(A) and 27 C.F.R. § 478.128(a)."

32.     Pursuant to 18 U.S.C. § 923(f)(2), Shark Coast timely requested an administrative hearing with respect to the application denial and revocation of its FFLs. An informal hearing was held in Tampa, Florida on February 7, 2017.

33.     At the hearing, Mr. Meade testified that he had no role in his wife's proposed firearms business nor in her application for an FFL. Lorrie Vogel-Avendano also explained that her actions were independently hers.

34.     On June 5, 2017, Shark Coast received a Final Notice of Revocation of Firearms License and a Final Notice of Denial of Application from DIO Gerber ("Final Notices"), dated May 22, 2017. The Final Notice revoked Shark Coast's FFLs effective immediately.  Shark Coast has obtained a Letter of Operating Authority from ATF allowing

continuing operations.

35.     The Final Notices set forth certain purported findings of fact and conclusions of law regarding the revocations and application denial.  The findings are identical in substance regarding the revocations and denial.

36.     Specifically, the Final Notices found that "Shark Coast Tactical, LLC willfully violated the provisions of the Gun Control Act and the regulations prescribed thereunder by willfully making false statements of a material fact in connection with the Application for Federal Firearms License . . . completed November 5, 2015 and filed on November 17, 2015 by falsely listing Brandon Tactical, LLC as the applicant when, in fact, Shark Coast Tactical, LLC was the entity seeking the issuance of the license in violation of 18 U.S.C. § 924(a)(l)(A) and 27 C.P.R.§ 478.128(a)."

37.     Pursuant to ATF policy and applicable law, revocations should only be undertaken for willful violations that could affect public safety or hamper ATF's ability to reduce violent crime.

## COUNT I

## ATF WAS NOT AUTHORIZED TO REVOKE SHARK COAST'S FFLs OR TO DENY ITS APPLICATION UNDER THE FACTS AND GOVERNING STATUTES

38.     Paragraphs 1-37 are incorporated as if set forth at length herein.

39.     Judicial review of this matter is governed by 18 U.S.C. § 923(f)(3), which provides for *de novo* review.  That statute further provides that the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing.

40.    The statutes governing issuance and revocation of licenses are specific and mandatory.  18 U.S.C. § 923(c) provides that "Upon the filing of a proper application and payment of the prescribed fee, the Attorney General *shall issue* to a qualified applicant" the appropriate license. (emphasis added)   18 U.S.C. § 923(d)(1) provides that "Any application submitted under subsection (a) or (b) of this section *shall be approved* if" seven specified conditions are met.  All of those conditions were met by Shark Coast with respect to its 2016 application for the Valrico location, and the Final Notices do not establish that they were not met.

41.    18 U.S.C. § 923(e) provides that a license may be revoked "if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . . ."  Neither Shark Coast nor William Meade willfully violated any such provision, rule, or regulation, and the Final Notices do not establish any such willful violation.

42.    Shark Coast did not make any false statement with respect to the Brandon application.  Shark Coast did not make any statement at all on that application.  As testimony and documents at the hearing established, that application was made by Lorrie Vogel-Avendano Meade for Brandon Tactical, LLC.  As was pointed out during the hearing, Shark Coast did not touch or make any marks on the application form.  Even if there were any false statements on the application form, which there were not, they were not made by Shark Coast.

43.    ATF has failed to identify specifically any statement, allegedly made by Shark Coast, on the Brandon application which they believe is false.  No statement by

Shark Coast was made "willfully"; that is, in deliberate disregard for and/or in plain indifference to a known legal obligation, because no statement was made by Shark Coast and no false statement has been identified.

44.     ATF's conclusion in the Final Notices that false statements were made by Shark Coast on the Brandon application is in direct contradiction to the findings ATF made in rejecting the Brandon application, in which it was stated that Brandon, not Shark Coast, made the statements on the application.

45.     The Final Notices find that "Shark Coast Tactical, LLC, by and through William and Lorrie Meade, made a false statement" in applying for the Brandon FFL "by claiming to be Brandon Tactical."  But Brandon LLC was the applicant, not Shark Coast, and Shark Coast never "claimed to be" Brandon LLC.

46.     The Final Notices rely on comments made by Mr. Meade on social media in April of 2016.  Mr. Meade said that "we" cannot get an FFL so "we" are going to open up a non-firearms accessory store.  The Final Notices imply that the only reason for using "we" was if Shark Coast was going to run the operation.  However, these comments were not posted until after it was known informally that ATF would not be issuing an FFL to Mrs. Meade.  At that point, using the premises as a firearms accessories store, which does not require an FFL, was the only option remaining until Shark Coast could submit an FFL application later that year for the Valrico location, after the expiration of the one year period imposed by ATF.

47.     The Final Notices claim that Shark Coast agreed not to use the Valrico premises as an FFL location.  However, that "offer," made by Shark Coast's former

counsel, was not "accepted" by ATF or made part of any agreement between Shark Coast and ATF. The letter from Shark Coast's former counsel stated that the resolution proposed by him was a "suggestion." Instead, the actual Superseding Notices issued by ATF provided only for a ten-day suspension and a $5,000 fine. They did not contain a provision that Shark Coast would never use the Valrico premises as a licensed dealership, or that Shark Coast could not do so for a period of one year. Indeed, by verbally imposing a one-year limitation on Shark Coast's reapplying for an FFL at the Valrico location, ATF was fully aware that that there was at least a possibility that Shark Coast might reapply in the future.

48.     Shark Coast did not "attempt to evade the consequences of its own negotiated settlement," as the Final Notices contend. The Superseding Notices did not contain any limitation on whether Shark Coast could apply for an FFL at the Valrico location, or whether another entity could do so.

49.     ATF had no statutory authority to impose on Shark Coast a prohibition against using the Valrico premises as a licensed dealership for a period of one year.

50.     ATF had no statutory authority to require Mrs. Meade to sign a sworn affidavit saying that Mr. Meade would not be involved in her proposed FFL business in any way or to ever even visit the premises. There was no evidence that Mr. Meade should have been listed as a responsible person on Brandon's application, or that he would have had any involvement with operating that business. In any event, there is no legal prohibition against Mr. Meade having some involvement in Brandon's proposed FFL operations.

51.     Brandon was not a "straw applicant," as the Final Notices contend.  There was no evidence that Shark Coast intended to operate the business at Valrico if the Brandon FFL was granted.  Instead, there was testimony that it was to be operated by Brandon and Mrs. Meade.  Furthermore, the findings in the Final Notices that this was some kind of subterfuge are entirely undercut by the fact that there would have to be (and was) an initial inspection, that the premises were the same as those for which Shark Coast had previously submitted an FFL application, and that ATF would be entirely aware that Mrs. Meade and Mr. Meade were married.  ATF has no authority to determine that Shark Coast was the "true applicant" and "intended recipient" of the license, when the Brandon application was submitted in the name of and by Brandon LLC.

52.     Shark Coast's business operations do not constitute a threat to public safety or hamper ATF's efforts to reduce violent crime.  Shark Coast's decision to open an accessory store after both Shark Coast's and Brandon's efforts to obtain an FFL for the Valrico location were thwarted by the ATF were reasonable and lawful.

53.     The findings and conclusions in the Final Notices are contrary to the facts, the evidence presented at the hearing, and the statutes governing revocations and applications, and ATF has exceeded its authority by revoking Shark Coast's FFLs and denying its application for an FFL at the Valrico location.

**PRAYER FOR RELIEF**

WHEREFORE, Shark Coast Tactical LLC, respectfully requests that this Honorable Court enter judgment in its favor and against DIO Gerber, declare that sufficient grounds for revoking Shark Coast's FFLs and denying its application for the Valrico

location do not exist, declare that ATF exceeded its authority in imposing unlawful conditions on Shark Coast, declare that the Final Notices are unlawful and void, and order that Shark Coast's FFLs are reinstated and that its application should be approved, award costs and reasonable attorney fees pursuant to 18 U.S.C. § 924(d)(2)(B) and 28 USC § 2412 as appropriate, and award any further relief deemed just and appropriate.

Respectfully Submitted,

SHARK COAST TACTICAL LLC

By counsel

Dan M. Peterson
Dan M. Peterson PLLC
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
dan@danpetersonlaw.com

TRIAL COUNSEL
(pro hac vice to be submitted)

Thomas J. Leek
Florida Bar No. 116408
Cobb Cole
149 S. Ridgewood Avenue
Suite 700
Daytona Beach, FL 32114
(386) 323-9210
(386) 944-7954
thomas.leek@cobbcole.com